**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| QUENTIN WILKERSON, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 16-953-LPS |
| | : | |
| G.R. JOHNSON, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

---

## MEMORANDUM OPINION

Quentin Wilkerson. *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

May 29, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and an Amended Petition (hereinafter collectively referred to as "Petition") filed by Petitioner Quentin Wilkerson ("Petitioner"). (D.I. 3; D.I. 8) The State has filed an Answer in Opposition. (D.I. 17) For the reasons discussed, the Court will dismiss the Petition.

## II.    BACKGROUND

In April 2013, a Delaware Child Predator Task Force investigator conducting an undercover investigation into peer-to-peer file sharing of child pornography identified an internet protocol (IP) address as a potential download source of prohibited images. *See State v. Wilkerson*, 2016 WL 795978, at *14 (Del. Super. Ct. Feb. 26, 2010). The investigator connected the IP address to Petitioner. *Id.* On June 27, 2013, police executed a search warrant of Petitioner's home, vehicles, and computers. *Id.* at *1. When they arrived at Petitioner's house around 7:09 a.m., neither Petitioner nor his wife were at home. *Id.* They obtained Petitioner's wife's phone number from his son and called her at 7:25 a.m., telling her that they had a "computer related" search warrant. *Id.* Petitioner's wife called Petitioner to tell him about the search, and he arrived home around 8:30 a.m. in a van. *Id.* Police located an HP Pavilion laptop computer in Petitioner's van and, in a post-*Miranda* interview, Petitioner told police that the laptop was his and that he was the primary user. *Id.*

An examination of the laptop revealed child sexual exploitation ("CSE") videos and images that had been downloaded through a peer-to-peer file sharing program. *See Wilkerson*, 2016 WL 795978, at *4. The computer investigation also revealed that Petitioner took steps to delete peer-to-peer filed sharing programs and CSE video files from his laptop after his wife notified him that

police were searching his house. *Id.* A forensic analysis of Petitioner's computer revealed the

following:

> [O]n 6/27/13 between 7:41 and 7:52 am, steps had been taken to
> delete and remove traces of peer-to-peer file sharing programs and
> child sexual exploitation video files [from Petitioner's HP Netbook
> computer]. [The investigator] was able to locate 8 Child Sexual
> Exploitation (CSE) video files in the current directory structure
> which had been downloaded through use of the Ares Peer to Peer
> file sharing program. Another 10 (CSE) video files were located in a
> volume shadow copy (a Windows Backup) from 6/13/2013.
> Additionally, [the investigator] found 45 CSE image files in the
> directory structure of the computer, many of which had been viewed
> and downloaded via internet web browsing.
>
> Approximately 650 child erotic image files were located in the
> Window Temporary Internet Files, a directory in which files are
> cached to the local hard drive during web browsing with Microsoft
> Internet Explorer. These files had been written to the hard drive late
> in the morning on 6/26/2013. [The investigator] also found
> indications that email for [Petitioner] . . . had been checked just prior
> to that time period on the morning of 6/26/2013.

*Wilkerson*, 2016 WL 795978, at *4.

Petitioner was arrested on June 27, 2013, and was subsequently indicted on 25 counts of

dealing in child pornography in violation of 11 Del. C. § 1109(4). (D.I. 17 at 1; D.I. 20-3 at 15-23)

On April 29, 2014, he pled guilty to one count of dealing in child pornography (11 Del. C. § 1109(4))

and two counts of possession of child pornography (11 Del. C. § 1111), as lesser-included offenses

of dealing in child pornography; the State dropped the remaining charges and capped its sentencing

recommendation at ten years of Level V incarceration. (D.I. 17 at 7; *see also Wilkerson*, 2016 WL

795978, at *4. The Delaware Superior Court sentenced Petitioner as follows: (1) to 25 years of

Level V incarceration, suspended after three years and six months for decreasing levels of

supervision, for the dealing in child pornography conviction; and (2) to three years of Level V

incarceration, suspended for three years of Level III probation, for each possession of child

pornography conviction.  *See Wilkerson v. State*, 173 A.3d 1061 (Table), 2017 WL 5450747, at *1 (Del. Nov. 13, 2017).  Petitioner did not file a direct appeal.

In September, 2014, Petitioner filed in the Superior Court a motion for modification of sentence, which the Superior Court denied on September 29, 2014.  (D.I. 17 at 2; D.I. 21-1 at 4) Thereafter, in February 2015, Petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied on February 26, 2016.  (D.I. 17 at 2; *see also Wilkerson*, 2016 WL 795978, at *26)  Petitioner appealed. The Delaware Supreme Court affirmed the Superior Court's judgment on July 21, 2016, and denied Petitioner's motion for reargument *en banc* on August 8, 2016.  *See Wilkerson v. State*, 144 A.3d 1108 (Table), 2016 WL 4093899, at *1 (Del. July 21, 2016).

On May 22, 2017, Petitioner filed in the Superior Court a second motion for modification of sentence, which the Superior Court denied on June 27, 2017.  *See Wilkerson v. State*, No. 299, 2017, Order, at 2 (Del. Nov. 3, 2017).  The Delaware Supreme Court affirmed that decision on November 3, 2017.  *Id.* at 6.  Sometime after November 3, 2018, Petitioner filed another motion for modification of sentence, which the Superior Court denied.  *See Wilkerson v. State*, 194 A.3d 907 (Table), 2018 WL 4600812 (Del. Sept. 17, 2018).  The Delaware Supreme Court affirmed that decision on September 17, 2018, and denied Petitioner's motion for rehearing *en banc* on October 2, 2018. *Id.*

## III.    LEGAL STANDARDS

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b);

3

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The

AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give

"state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see also*

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement

by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either

on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to

consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*,

489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts.  *See Lines v. Larkins,* 208 F.3d 153, 160 (3d

Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically exhausted,

such claims are nonetheless procedurally defaulted.  *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*,

501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest

court, but that court "clearly and expressly" refuses to review the merits of the claim due to an

4

independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

6

## IV.    DISCUSSION

Petitioner timely filed the Petition presently pending before the Court, which asserts the following nine grounds for relief:[1] (1) defense counsel provided ineffective assistance during the pre-trial/pre-plea stages by providing faulty advice about the charges, failing to perform independent research, failing to file a motion to suppress evidence, and failing to challenge the indictment (D.I. 3 at 5); (2) defense counsel provided ineffective assistance during the guilty plea stage by providing incorrect advice/information about the charges, withholding evidence, and being unprepared for trial (D.I. 3 at 7);  (3) 11 Del. C. § 1109(4) is unconstitutional (D.I. 3 at 8); (4) the search warrant was unconstitutionally overbroad; (5) the search of Petitioner's work van was illegal; (6) Petitioner's plea was unknowing and unintelligent because the plea colloquy and TIS forms did not sufficiently ensure that he understood the plea and its consequences; (7) the Delaware state courts denied Petitioner his Sixth Amendment right to counsel by failing to appoint post-conviction counsel to represent him; (8) the indictment violated double jeopardy; and (9) defense counsel operated under a conflict of interest while representing him.

### A.  Claims One, Two, Four, Five, Six, Eight, Nine: Procedurally Barred

The record reveals that Petitioner did not present Claims Five and Six in his Rule 61 motion or on post-conviction appeal.  In addition, although Petitioner included Claims One, Two, Four, Eight and Nine in his Rule 61 motion, he did not present these five claims to the Delaware Supreme Court on post-conviction appeal.[2]  Therefore, all of the aforementioned seven Claims are unexhausted.

---

[1]Although the Court has re-numbered and re-organized Petitioner's Claims, the substance of each Claim is the same as originally presented in the Petition.

[2]Petitioner did not include Claims One, Two, Four, Eight and Nine in his opening brief to the Delaware Supreme Court when he appealed the Superior Court's denial of his Rule 61 motion, and

At this juncture, any attempt by Petitioner to raise Claims One, Two, Four, Five, Six, Eight, or Nine in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. Del. Feb. 26, 2009).  Claims Five and Six, which Petitioner did not raise at all in the Delaware state courts, would also be barred under Rule 61(i)(2) and (3) as successive and procedurally defaulted.  *See* Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive motion unless certain pleading requirements are satisfied); Del. Super. Ct. Crim. R. 61(i)(3) ("[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction [] is thereafter barred, unless the movant shows [] cause [] and [] prejudice . . . .").  Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1), (2) and (3) apply in this case,[3] any attempt to exhaust state remedies would be futile.  Given this futility, the Court must treat Claims One, Two, Four, Five, Six, Eight, and Nine as

_____

he actually stated "I will not waste the Court's valuable time in arguing on the grounds of ineffective assistance of counsel at this time."  (D.I. 20-2 at 1-2)  The State filed a Motion to Affirm the Superior Court's decision on May 31, 2016, explicitly stating that Petitioner "foregoes all of his ineffective assistance of counsel claims."  (D.I. 20-3 at 1-3)  On June 10, 2016, Petitioner filed a letter with the Delaware Supreme Court asking to add ineffective assistance of counsel arguments (*i.e.*, Claims One and Two) to his appeal.  (D.I. 20-4 at 1-3)  On July 21, 2016, in the same order affirming the Superior Court's denial of the Rule 61 motion, the Delaware Supreme Court denied Petitioner's request to add the additional grounds to his appeal.  (D.I. 20-5 at 1)

As explained in the body of this Opinion, Claims One, Two, Four, Eight, and Nine are unexhausted because Petitioner did not present them to the Delaware Supreme Court in his post-conviction appeal.  In addition, the Court views the Delaware Supreme Court's explicit denial of Petitioner's request to add Claims One and Two to his post-conviction appeal as an indication that Petitioner did not fairly present Claims One and Two in a procedural manner allowing the Delaware Supreme Court to consider those claims on the merits.

[3]Delaware Superior Court Criminal Rules 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim over which the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid.  *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5).  Petitioner does not allege a valid claim of actual innocence; nor does he allege a lack of jurisdiction or that a new rule of constitutional law applies to his Claims.

technically exhausted but procedurally defaulted.  Therefore, the Court cannot review the merits of the instant seven Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner attempts to establish cause for his default by pointing to the Superior Court's failure to appoint counsel to represent him during his Rule 61 proceeding, and also to the Delaware Supreme Court's denial of his request to supplement his post-conviction appellate opening brief with the ineffective assistance of counsel allegations presented in Claims One and Two.  These arguments fail to establish cause sufficient to excuse Petitioner's default.  In *Martinez v. Ryan,* 566 U.S. 1, 12, 16-17 (2012), the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  However, in order to obtain relief under *Martinez,* a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding, that the underlying ineffective assistance of trial counsel claim is substantial, and that he was prejudiced.  *Id.* at 14-17.  A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability.  *Id.* at 13.  Significantly, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*."  *Id.* at 16 (emphasis added).  The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding."  *Id.* at 11.

9

Here, the *Martinez* rule cannot provide cause for Petitioner's default of Claims Four, Five, Six, Eight, and Nine because these Claims do not allege the ineffective assistance of trial counsel. The *Martinez* rule is also inapplicable to Claims One and Two – which do allege the ineffective assistance of trial counsel – because Petitioner presented these two Claims in his "initial-review collateral proceeding" (*i.e.*, his Rule 61 motion); the instant default occurred because the Claims were not then presented to the Delaware Supreme Court on appeal from that proceeding.

In the absence of cause, the Court does not need to address prejudice. The miscarriage of justice exception also does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, Four, Five, Six, Eight, and Nine as procedurally barred.

### B.  Claim Three: Meritless

Petitioner pled guilty to one count of dealing in child pornography under § 1109(4) and to two counts of possession of child pornography under § 1111. Section 1109(4) provides that a person is guilty of dealing in pornography when:

> The person intentionally compiles, enters, accesses, transmits, receives, exchanges, disseminates, stores, makes, prints, reproduces or otherwise possesses any photograph, image, file, data or other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act. For the purposes of this subsection, conduct occurring outside the State shall be sufficient to constitute this offense if such conduct is within the terms of § 204 of this title, or if such photograph, image, file or data was compiled, entered, accessed, transmitted, received, exchanged, disseminated, stored, made, printed, reproduced or otherwise possessed by, through or with any computer located within Delaware and the person was aware of circumstances which rendered the presence of such computer within Delaware a reasonable possibility.

Section 1111 provides that a person is guilty of possession of child pornography when:

10

(1)  The person knowingly possesses any visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act; or

(2)  The person knowingly possesses any visual depiction which has been created, adapted, modified or edited so as to appear that a child is engaging in a prohibited sexual act or in the simulation of such an act.

In Claim Three, Petitioner presents three arguments as to why his dealing in child pornography conviction under § 1109(4) is illegal: (1) § 1109(4) violates constitutional prohibitions against double jeopardy; (2) § 1109(4) is overly broad; and (3) and § 1109(4) is vague and ambiguous. Specifically, Petitioner contends that Delaware "lawmakers never intended for [] § 1109(4) to be used to convict persons with 'possession,' whether intentional or inadvertent," and the "State intentionally misuses the phrase 'otherwise possesses' to force 'possession' and 'dealing' into one statute, thereby putting a person in jeopardy twice – once for possession and once for dealing – violating double jeopardy." (D.I. 8 at 4)  Petitioner also argues that the phrase "otherwise possesses" in § 1109(4) renders § 1109(4) overly broad because the State can (and did in his case) choose whether to use § 1109(4) to prosecute someone for possession or dealing.  Petitioner asserts that "§ 1109(4) encompasses several offenses making it overly broad in nature," and that § 1109(4) violates double jeopardy because it "blankets" the "lesser included offense of possession within" it. (D.I. 20-2 at 8)  According to Petitioner, § 1109(4) is too ambiguous because the Delaware General Assembly never intended § 1109(4) to cover mere possession of child pornography.  (D.I. 8 at 10)

Petitioner presented the same three-pronged argument to the Superior Court in his Rule 61 motion.  The Superior Court denied the argument as meritless, explaining:

You allege that the Delaware Legislature never intended for the Dealing in Child Pornography statute to be applied the way it has been and is being applied.  The Delaware Supreme Court in *Fink* [*v. State*, 817 A.3d 781 (2003)] had no trouble understanding how the

11

> legislature intended the Dealing in Child Pornography statute to be applied and in fact said that the legislative history supported the manner in which it had been applied.  Your allegation is without merit.

*Wilkerson*, 2016 WL 795978, at *7.  The Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of and for the reasons assigned by the Superior Court in its well-reasoned [] decision."  *Wilkerson*, 2016 WL 4093899, at *1.  Therefore, Claim Three will only warrant relief if the Superior Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

### 1.  Double jeopardy

The Double Jeopardy Clause protects a defendant against being punished twice for a single criminal offense.  U.S. Const. Amend. V.  When multiple sentences are imposed in the same trial, the "constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  The traditional test for double jeopardy claims involving the charging of separate offenses under separate statutes is the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).  Pursuant to *Blockburger*, a court must analyze "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."  *United States v. Dixon*, 509 U.S. 688, 696 (1993).  The rule articulated in *Blockburger* is a "rule of statutory construction to help determine legislative intent;" the rule is "not controlling when the legislative intent is clear from the face of the statute or the legislative history."  *Garrett v. United States*, 471 U.S. 773, 778-79 (1985).

As a general rule, offenses are the same "in law" where "one is a lesser-included offense of the other under the 'same elements' (or *Blockburger*) test."  *United States v. Miller*, 527 F.3d 54, 71 (3d

Cir. 2008).  However, depending upon the factual circumstances, two offenses can constitute a greater and lesser offense under state law and not constitute the "same offense" for Double Jeopardy purposes. *See Brown,* 432 U.S. at 164 ("The principal question in this case is whether auto theft and joyriding, a greater and lesser included offense under Ohio law, constitute the 'same offence' under the Double Jeopardy Clause."); *but see Ricketts v. Adamson,* 483 U.S. 1, 8 (1987) (stating that under Arizona law second degree murder is lesser included offense of first degree murder, so Double Jeopardy Clause would bar prosecution for both, absent special circumstances).

Petitioner has not shown that the Superior Court's rejection of the double jeopardy argument presented in Claim Three was contrary to, or involved an unreasonable application of, federal law, or that it was based on an unreasonable determination of the facts.  Even if possession of child pornography is a lesser included offense of dealing in child pornography under Delaware law, Petitioner incorrectly concludes that this necessarily results in a double jeopardy violation under *Blockburger.*  The key issue under *Blockburger* is whether each of these offenses requires proof of a different element.  *See Hakeem v. Beyer,* 990 F.2d 750, 759 (3d Cir. 1993) (holding that petitioner's dual convictions survived *Blockburger* analysis because "the two crimes have different elements").

Although the Superior Court's decision does not explicitly address Petitioner's argument in terms of *Blockburger* and the prohibition against double jeopardy, the Superior Court implicitly found that the one charge for dealing in child pornography and the two charges for possession of child pornography were based on three entirely independent acts.  For instance, when rejecting Petitioner's contention that defense counsel should have challenged the indictment as being

multiplicitous[4] because it contained multiple counts based upon the same conduct, the Superior

Court explained:

> Your allegation is conclusory. You have not identified which counts
> are based on the same set of operative facts, leaving me with no way
> to evaluate your allegation. I note that your defense counsel reviewed
> the evidence against you and concluded that the State would have an
> easy time convicti[ng] you [of] all 25 charges of Dealing in Child
> Pornography. I note further that the State's forensic examination
> mentions 18 files found on your laptop and seven files that you had
> deleted, but were recovered by the State. The seven files are
> discussed in great detail in the forensic report. The other 18 files
> were available for your defense counsel to watch, which he did. I am
> sure he did based on his detailed letter to you. Your allegation is
> without merit.

*Wilkerson*, 2016 795978, at *5. Additionally, when rejecting Petitioner's argument regarding the

State's unconstitutional use of § 1109(4), the Superior Court explicitly relied upon the following

excerpt from *Fink v. State* to support its conclusion that the Delaware Supreme Court had already

considered and rejected a similar argument:

> Both 11 Del. C. § 1109(4) and § 1111(1) use the term "visual
> depiction" in the singular. The clearest reading of the statute[s] is
> that each "individual depiction" of child pornography that is
> knowingly "dealt" or possessed by a defendant constituted the basis
> for a separate offense under the statutes. Accordingly, in this case,
> Fink's possession of multiple photographs depicting child
> pornography constituted multiple violations of both the dealing and
> the possession statute. Each picture is a crime against the child
> depicted as well as an offense to society.

*Wilkerson*, 2016 WL 795978, at *6. The Superior Court in Petitioner's case then explained that,

> Put another way, the State could have charged you under either
> statute based upon the facts of your case. You had numerous images
> of child pornography on your computer as well as a network that
> made the sharing of this child pornography available to you and

---

[4]An indictment is multiplicitous if it charges a single offense in different counts. A multiplicitous indictment may violate double jeopardy or otherwise prejudice the defendant if it results in multiple sentences for a single offense. *United States v. Haddy,* 134 F.3d 542, 548 n.7 (3d Cir. 1998).

> others.  Your conduct is clearly covered by § 1109(4).  The State
> chose to charge under 11 Del. C. § 1109(4).  I know that everyone
> charged with Dealing in Child Pornography, a serious felony, would
> much rather be charged with Possession of Child Pornography, a
> misdemeanor.  Unfortunately for you, given the amount of child
> pornography on your laptop and the manner in which you obtained it
> and made it available to others, that was just not going to happen. . . .
> Your allegation is without merit.

*Wilkerson*, 2016 WL 795978, at *7.

Given the foregoing, the Court concludes that the Superior Court's reliance on *Fink* and its

denial of relief without further analysis of the statutory elements under *Blockburger* was not

objectively unreasonable.  *See Blockburger,* 284 U.S. at 302 (stating that where there is factual

distinction between transactions, offenses are not continuous).  The fact that the State's evidence

consisted of numerous images/depictions of child pornography supports the conclusion that

Petitioner's conviction for one count of "dealing" in child pornography was based on an image of

child pornography (or a CSE video) that was different and distinct from the images forming the

basis for his convictions on two counts of "possession" of child pornography.  Stated another way,

the dealing offense required proof of a fact that the possession offenses did not, namely, the specific

image related to each separate charge.  *See, e.g., State v. Hermes*, 2002 WL 484647, at *2 (Del. Super.

Ct. Mar. 28, 2002) (opining that double jeopardy argument based on simultaneous prosecution

under § 1109 and § 1111 would only have merit if State had attempted to use same 10 photographs

of child pornography for 10 possession charges and 10 unlawful dealing charges); *United States v.*

*Smith*, 910 F.3d 1047, 1055 (8th Cir. 2018) (finding no double jeopardy violation where there was

sufficient evidence supporting both theories of knowing possession of child pornography and

knowing receipt of child pornography); *United States v. Bryner,* 392 F. App'x 68, 73-74 (3d Cir. 2010)

(dual convictions for possession and receipt of child pornography based on different images and

separate underlying conduct did not offend Double Jeopardy Clause); *United States v. Polouizzi*, 564 F.3d 142, 159 (2nd Cir. 2009) (declining to determine if possession of child pornography is lesser-included offense of receipt of child pornography because no double jeopardy violation arises when possession convictions are based on images which did not form basis of receipt convictions); *see also Miller*, 527 F.3d at 58 ("The Constitution's double jeopardy clause barred entry of separate convictions for receiving and possessing ***the same images of child pornography***.") (emphasis added).

Accordingly, the Court will deny Petitioner's double jeopardy argument as meritless.

### 2. Overly broad

Petitioner also contends that § 1109(4) is unconstitutionally overbroad on its face and as applied to him. This argument fails to assert an issue cognizable on habeas review. Overly broad statutes prohibit conduct that is constitutionally protected;[5] the overbreadth doctrine has only been applied in First Amendment cases. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); *Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*, 733 F. App'x 34, 39-40 (3rd Cir. 2018); *Lutz v. City of York*, 899 F.2d 255, 270-71 (3d Cir. 1990) ("[T]he overbreadth doctrine has never been recognized outside the context of the First Amendment."). Visually depicting children in still photographs or in films engaging in a variety of sexual activities or exposing their genitals is not protected by the First Amendment. *See New York v. Ferber*, 458 U.S. 747, 766-74 (1982). Thus, Petitioner's overbreadth challenge fails to allege a proper basis for federal habeas relief.

---

[5] *See Virginia v. Hicks*, 539 U.S. 113, 118-20 (2003).

### 3. Void for vagueness

Petitioner also argues that his conviction under § 1109(4) is illegal because the statute is void-for-vagueness.  Petitioner argues that the phrase "otherwise possesses" as contained in § 1109(4) is too ambiguous and vague, thereby permitting the State to charge him with dealing child pornography when he merely possessed child pornography.  (D.I. 8 at 4)  His argument is unavailing.

"Void-for-vagueness challenges, absent a First Amendment claim, are evaluated as applied to the facts of each case."  *United States v. Wetherald*, 636 F.3d 1315, 1326 (11th Cir. 2011).  The "void-for-vagueness doctrine addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions."  *Skilling v. United States*, 561 U.S. 358, 411 (2010).  A law is unconstitutionally vague if it does not provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.  *See id.* at 402-03; *First Resort v. Herrara*, 860 F.3d 1263, 1274-75 (9th Cir. 2017) (rejecting vagueness challenge of ordinance in § 1983 action where it would be clear to person of ordinary intelligence what ordinance prohibits).  A statute or its application is presumed to be constitutional, and the challenger bears the burden of proving that a statue is unconstitutional.  *See I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983); *Marshall v. Lauriault*, 372 F.3d 175, 185 (3rd Cir. 2004).

Here, § 1109(4) is not void-for-vagueness.  First, it does not invite arbitrary and discriminatory enforcement.  Under the terms of § 1109(4), dealers of child pornography can also be possessors, but possessors of child pornography under § 1111 (without more) cannot be dealers.  Since Petitioner violated both statutes, the State simply exercised its discretion in choosing to prosecute under § 1109(4) rather than § 1111.  *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute,

the Government may prosecute under either so long as it does not discriminate against any class of defendants."). Significantly, Petitioner has not presented any evidence that the State chose to charge him for an arbitrary or discriminatory purpose.

Second, the wording of the statute allows a reasonable person to understand what conduct is prohibited. Section 1109(4) provides that a person is guilty of dealing in child pornography if he "intentionally compiles, enters , accesses, transmits, receives, exchanges, disseminates, stores, makes, prints, reproduces, or otherwise possesses any photograph, image, file data or other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act." 11 Del. C. § 1109(4). On its face, this language includes any person, like Petitioner, who intentionally uses a file sharing program to obtain, receive, and compile child pornography. The statute is presumed to be constitutional, and Petitioner has not met his burden of proving its unconstitutionality.

Finally, the Delaware courts that have considered a void-for-vagueness argument in relation to § 1109(4) have consistently concluded that § 1109(4) unambiguously allows the State to prosecute an individual for dealing, even though he simply possesses child pornography. *See Panuski v. State*, 2012 WL 1413159, at *4 (Del. Super. Ct. Feb. 1, 2012), *aff'd*, 41 A.3d 416, 422-23 (Del. 2012); *State v. Wheeler*, 2014 WL 7474234, at *10 (Del. Super. Ct. Dec. 22, 2014) ("The mere presence of another statute, here Section 1111(11), which also makes possession of child pornography illegal, does not render Section 1109(4) ambiguous or inapplicable when the State charges under Section 1109(4) for possession of child pornography."), *rev'd on other grounds*, 135 A.3d 282 (Del. 2016). Thus, Petitioner's void-for-vagueness argument lacks merit.

In short, having considered and rejected Petitioner's three challenges to the constitutionality of § 1109(4), the Court will deny Claim Three in its entirety as meritless.

### C.  Claim Seven: Not Cognizable

In Claim Seven, Petitioner contends that the Delaware courts violated his Sixth Amendment right to counsel because they refused to appoint post-conviction counsel to represent him.  There is no federal constitutional right to counsel in collateral proceedings, and freestanding claims of ineffective assistance of post-conviction counsel are not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.");  *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Although, as previously explained, *Martinez* announced a "narrow exception" to the rule that an attorney's performance in a state collateral proceeding cannot qualify to excuse a procedural default, *Martinez* did not recognize or create an automatic constitutional right to counsel in collateral proceedings.  Thus, the Court will deny Claim Seven for failing to present a proper basis for federal habeas relief.

## VI.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VII.    CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied.  An appropriate Order will be entered.